IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| A.S.R., individually and on behalf of all others similarly situated,<br><br>*Petitioner–Plaintiff*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>*Respondents–Defendants*. | Case No. 3:25-cv-00113-SLH |

**PETITIONER-PLAINTIFF'S SUPPLEMENTAL BRIEF
ON THE COURT'S JURISDICTION**

**INTRODUCTION**

Because habeas jurisdiction vests at the time of filing, the operative question before this Court is where A.S.R. was at 10:38 AM on April 15, 2025, which is when the petition was docketed on ECF. A.S.R. attests that he was at Moshannon Valley Processing Center ("Moshannon") at 10:38 AM. Indeed, in his sworn declaration, A.S.R. attests that the van transporting him left Moshannon Valley Processing Center ("Moshannon") for Harrisburg Airport no earlier than 11:20 AM, more than forty minutes *after* counsel filed the habeas petition at 10:38 AM. An email from a Moshannon ICE officer to A.S.R.'s immigration attorney states that A.S.R. was still at Moshannon at 11:55 AM. Consequently, habeas jurisdiction clearly is vested in this Court.

**FACTUAL BACKGROUND**

On April 15, 2025, Petitioner's counsel filed a habeas petition and complaint for declaratory and injunctive relief on behalf of Petitioner and the proposed class. ECF No. 1. Petitioner and the proposed class members are all Venezuelan men in immigration custody at risk

1

of imminent removal under the President's Proclamation invoking the Alien Enemies Act. *Id*. The ECF notice lists the docketing time as 10:38 AM. Ex. A.[1]

According to A.S.R.,[2] the van transporting him on April 15, 2025, left Moshannon well after 11:00 AM on April 15, 2025. Ex. E, A.S.R. Decl. ¶¶ 6–7. A.S.R. knew the time because he passed a clock showing 11 o'clock as he was being led out of the facility, in shackles, to an awaiting bus. *Id*. ¶ 6. Once A.S.R. was loaded onto the bus, the bus did not leave the detention center for approximately another 20 minutes because staff were escorting, loading and securing additional detained individuals one by one. *Id*. ¶ 7. According to Google Maps, it is another 2.2 miles to the Clearfield County line, which is also the dividing line between the western and middle districts. The drive takes approximately five to seven minutes.

Later that morning of April 15, at 11:55 AM, an ICE deportation officer who works from the Moshannon sub-office of the ICE Philadelphia Field Office, wrote to A.S.R.'s immigration attorney that A.S.R. was "still in custody at Moshannon." Ex. F, Gian-Grasso Second Decl. ¶ 4; *see also* Ex. G. This Court granted Petitioner's request for a Temporary Restraining Order (TRO) on April 15 at 3:12 PM. ECF No. 8; *see also* Ex. H, ECF Docket Notice.

Respondents' counsel represented to the Court during the April 17 status conference that the plane carrying A.S.R. and other putative class members departed the Harrisburg Airport for Abilene, Texas, at approximately 3:45 PM. Ex. I, 5:9-20. According to publicly available flight

---

[1] Counsel for Petitioner checked the ICE Online Detainee Locator System, https://locator.ice.gov/odls/#/search, repeatedly prior to filing the habeas petition. At 10:38 AM, contemporaneously with filing the petition, counsel ran another search, *see* Ex. B, which showed that Petitioner was located at Moshannon at that point. Counsel took a screenshot of that search, as well as subsequent searches at 11:07 AM. and 11:19 AM. Each search time Petitioner was still at Moshannon. *See* Ex. C-D.
[2] Counsel spoke with A.S.R., now detained at Bluebonnet Detention Center in the Northern District of Texas, by telephone on Tuesday, April 22 and Thursday, April 24. The attached declaration is based on that communication.

2

records, a plane left the Harrisburg airport at approximately 3:31 PM on April 15, 2025 and landed in Abilene, Texas at 5:43 PM. (Central Daylight Time). Ex. J.

On April 16, 2025, Petitioner filed a notice of case-related development to advise the Court that A.S.R. was still at Moshannon when the habeas petition was docketed, but that thereafter Respondents transferred him to Bluebonnet Detention Center. ECF No. 25. Also on April 16, Respondents submitted their opposition to Petitioner's Motion for a Temporary Restraining Order. Respondents' filing included a conclusory declaration from Deputy Field Office Director (DFOD) David O'Neill, that "[o]n April 15, 2025, *at approximately 10:30 a.m.*, A.S.R. was transferred from the MVPC to the Bluebonnet Detention Facility." ECF No. 26-5, ¶ 14 (emphasis added).

On April 17, 2025, this Court convened a status conference specifically to discuss the timing of A.S.R.'s transfer on April 15, 2025, and his whereabouts throughout the day. Ex. I, 4:11-18, 10:17-25. The Court directed the parties to submit supplemental briefs "specific to the issue of this Court's jurisdiction, to include specific factual documentation, as well as legal argument." ECF No. 30.

**ARGUMENT**

The habeas statute requires that the petitioner direct his writ of habeas corpus "to the person having custody of the person detained." 28 U.S.C. § 2243. The "default rule" in habeas cases requires suing the "immediate custodian," which is the warden of the facility in the district in which a noncitizen is confined at the time a habeas petition is filed. *Rumsfeld v. Padilla*, 542 U.S. 426, 435–36, 443–44 (2004) (majority opinion); *see also Ex Parte Endo*, 323 U.S. 283, 305–306 (1944). A.S.R. named Moshannon's warden, Leonard Oddo, as a Respondent. *See* ECF No. 1 ¶ 29.

The operative question, therefore, is where was A.S.R. detained on April 15 at 10:38 AM, 2025, when his habeas petition was docketed on ECF. Ex. A. Based on A.S.R.'s written

3

declaration, he was at Moshannon at that time. Ex. E, A.S.R. Decl. ¶¶ 6–7. According to A.S.R., the van transporting him did not leave Moshannon until at least 11:20 AM, plus the county line was at least another five minutes away. *Id.* ¶ 7; *supra* at 2. Consequently, habeas jurisdiction is vested with this Court since Respondents did not remove him from the District until nearly an hour after the Court docketed the habeas petition.

A.S.R.'s transfer outside of the Western District of Pennsylvania after the filing of the habeas petition does not divest this Court of jurisdiction. *Padilla*, 542 U.S. at 441 ("*Endo* stands for the important but limited proposition that when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction."). Both the U.S. Third Circuit Court of Appeals and its district courts follow this rule. *See e.g. Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 445–46 (3d Cir. 2021) ("the government's post-filing transfer of a § 2241 petitioner out of the court's territorial jurisdiction does not strip the court of jurisdiction over the petition"); *Summers v. FCI Loretto Warden*, No. 3:23-CV-00318, 2025 WL 72797, at *1 (W.D. Pa. Jan. 10, 2025) ("When the petitioner is transferred after filing a petition, the court in which the original petition was filed retains jurisdiction despite the custodial change"); *Morgan v. Oddo*, No. 3:24 CV 221, 2025 WL 1134979, at *1 n.1 (W.D. Pa. Apr. 17, 2025) (jurisdiction remains with the court despite transfer of a person out of district after habeas petition was filed).[3] As A.S.R. properly named the warden of the facility

---

[3] *See also Smith v. Ogle*, No. 3:21-CV-01129, 2023 WL 3369154, at *3 (M.D. Pa. Jan. 3, 2023), report and recommendation adopted, No. 3:21-CV-1129, 2023 WL 3362597 (M.D. Pa. May 10, 2023) (same); *Saillant v. Hoover*, No. 1:20-CV-00609, 2020 WL 4924567, at *2 (M.D. Pa. Aug. 21, 2020) (same); *Bah v. Wagner*, No. CIV.A.04-3639, 2005 WL 83259, at *2 (E.D. Pa. Jan 13, 2005) (same); *see also Chavez-Rivas v. Olsen*, 194 F. Supp. 2d 368, 371 (D.N.J. 2002) ("'[P]assing about of the body from one custodian to another after a writ of habeas corpus has been applied for [cannot] defeat the jurisdiction of the Court' to hear a habeas petition." (quoting *Ex parte Catanzaro*, 138 F.2d 100, 101 (3d Cir. 1943)).

where he was detained at the time of filing and was not transferred out of the district until after the habeas petition was filed, this District retains jurisdiction over this case.

## CONCLUSION

For the foregoing reasons, jurisdiction of Petitioner's habeas petition is properly vested with this Court because Petitioner was still detained in the Western District of Pennsylvania at the time the habeas petition was filed, and once vested that jurisdiction endures despite his subsequent transfer elsewhere.

Dated: April 24, 2025

Respectfully submitted,

/s/ *Vanessa L. Stine*

Lee Gelernt (NY 2502532)**
Daniel Galindo (CA 292854)**
Ashley Gorski (NY 4874228)*
Patrick Toomey (4983979)*
Sidra Mahfooz (NY 5782693)*
Omar Jadwat (NY 4118170)*
Hina Shamsi (NY 2995579)*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 519-7871
E: lgelernt@aclu.org
E: dgalindo@aclu.org
E: agorski@aclu.org
E: ptoomey@aclu.org
E: smahfooz@aclu.org
E: ojadwat@aclu.org
E: hshamsi@aclu.org

Noelle Smith (CA 344481)**
Oscar Sarabia Roman (CA 341385)**
My Khanh Ngo (CA 317817)**
Cody Wofsy (CA 294179)**
AMERICAN CIVIL LIBERTIES UNION FOUNDATION

Vanessa L. Stine (PA 319569)
Witold J. Walczak (PA 62976)
Keith Armstrong (PA 334758)**
AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA

P.O. Box 60173
Philadelphia, PA 19102
T: 215-592-1513
F: 267-573-3054
E: vstine@aclupa.org
E: karmstrong@aclupa.org

P.O. Box 23058
Pittsburgh, PA 15222
T: 412-681-7864
F: 267-573-3054
E: vwalczak@aclupa.org

Attorneys for Petitioner-Plaintiff
*Pro hac vice applications forthcoming*
**Admitted pro hac vice*

425 California Street, Suite 700
San Francisco, CA 94104
T: (415) 343-0770
F: (212) 519-7871
E: nsmith@aclu.org
E: osarabia@aclu.org
E: mngo@aclu.org
E: cwofsy@aclu.org