# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**A.S.R., on his own and on
behalf of others
similarly-situated,**

               Petitioner,      Civil Action No. 25-cv-113

       vs.

**DONALD J. TRUMP, in his
official capacity as President
of the United States, et. al,**

               Respondents.
                  -----

   Transcript of Proceedings held on Thursday, April 17, 2025,
in the United States District Court, 319 Washington Street,
Johnstown, PA  15901, before Honorable Stephanie Haines,
United States District Judge.

               -----

APPEARANCES:

  For the Petitioner:   Office of ACLU
                   by LEE GELERNT, ESQ.
                     VANESSA STINE, ESQ.
                     DANIEL GALINDO, ESQ.
                     WITOLD WALCZAK, ESQ.
                     KEITH ARMSTRONG, ESQ.

  For the            Office of U.S. Attorney
  Respondents:        by MICHAEL LEE IVORY, ESQ.
                     LAURA SCHLEICH IRWIN, Esq.

  Court Reporter:      Teresa M. Benson, RMR, FCRR
                   700 Grant Street
                   Suite 6260
                   Pittsburgh, PA  15219

               -----
  Proceedings recorded by mechanical stenography;
transcript produced by computer-aided transcription.

```
1                        P-R-O-C-E-E-D-I-N-G-S

2              (Open court.  In-chambers telephone status.)

3              THE COURT:  Good afternoon.  This is the time and the

4    manner set for status conference in the case of A.S.R. versus

5    Donald J. Trump, et. al.  This case is docketed at Case No.

6    3:25-cv-113.  I'm Judge Stephanie Haines, and I ask that the

7    parties enter their appearances at this time, starting with

8    the Petitioner.

9              MR. GELERNT:  Lee Gelernt from the ACLU for

10   Petitioner.

11             MR. GALINDO:  Daniel Galindo for the ACLU for

12   Petitioner.

13             MS. STINE:  Vanessa Stine with the ACLU of

14   Pennsylvania for the Petitioner.

15             THE COURT:  Attorney Walczak?

16             MR. ARMSTRONG:  Keith Armstrong, ACLU Pennsylvania

17   for Petitioner.

18             THE COURT:  I believe, Attorney Walczak, are you

19   still on the phone for the Petitioner?

20             MR. WALCZAK:  Yes, I am, Your Honor.  I'm very good

21   at speaking in the phone when it is muted.  My apologies.

22   Yes, I'm here.

23             THE COURT:  Don't worry.  That happens all the time.

24   All right.  So I think we've got everyone on the line entering

25   their appearances for the Petitioner.
```

 1                I'll now turn to the entry of appearances on behalf

 2      of the Respondents.

 3                MR. IRWIN:  Laura Irwin with the U.S. Attorney's

 4      office on behalf of Respondents.

 5                MR. IVORY:  May it please the Court, Michael Ivory on

 6      behalf of the Respondents.

 7                THE COURT:  Okay.  Since we all are at separate

 8      locations, I will ask that you identify yourself before you

 9      speak so that the record and the Court are clear as to who is

10      talking.

11                I scheduled this status conference as a result of the

12      Petitioner's notice of case-related development that was filed

13      yesterday at Document No. 25.  So my first question to the

14      parties, and I'll hear first from the Petitioner, where is the

15      Petitioner?

16                MR. GELERNT:  Your Honor, this is Lee Gelernt from

17      ACLU.  We believe he is now at the Bluebonnet Detention

18      Facility in the Northern District of Texas, but unfortunately,

19      his immigration attorney has not been able to reach him or

20      schedule an appointment.  But he has been taken out of the

21      district.  If that's no longer true, we would be interested in

22      the government correcting, but otherwise, we believe he is in

23      the Northern District of Texas.

24                THE COURT:  All right.  Before we go further into how

25      he got where he is at, I'm going to ask the Respondents, where

1    is the Petitioner right now?

2         MS. IRWIN:  It is our understanding that's correct,

3    but he is at the Bluebonnet.  This is Laura Irwin from the

4    U.S. Attorney's office.  That is our understanding as well,

5    that he is at the Bluebonnet facility in the Northern District

6    of Texas.

7         THE COURT:  Okay.  We are next going to turn then to

8    how and when he got to the Bluebonnet Detention Center in the

9    Northern District of Texas, and we are going to take this in

10   two different and distinct periods of time.

11        First, I'm interested in the Petitioner's specific

12   whereabouts and movements from the time that habeas petition

13   was filed yesterday morning at 10:38 until my Order at

14   Document No. 8 was entered at 3:12 yesterday afternoon.  So

15   let's first deal with that first period of time.  I'll talk

16   first with the Petitioners.  Tell me about what your

17   understanding is about your client's movements and whereabouts

18   during that period of time.

19        MR. GELERNT:  This is Lee Gelernt.  We are not

20   entirely sure.  Ms. Stine, who is on the line from the ACLU

21   Pennsylvania, may have some information, but the truth is we

22   would be interested in hearing from the government, because we

23   were not given any advance notice that he was being moved, so

24   I don't think we fully know of that exact -- where he was at

25   the given time.  So I think Your Honor probably should focus

1    on the relevant time period.

2         THE COURT:  Then I'm going to ask the Respondents.

3    The time period I want to hear specifics about first is the

4    timeframe from 10:38 yesterday morning when the habeas

5    petition was filed until 3:12 yesterday afternoon when my

6    Order was entered at Document No. 8.

7         I want you to detail for me his whereabouts and his

8    movements during that period of time.

9         MS. IRWIN:  This is Laura Irwin.  The information we

10   have is that he left MVPC at approximately 10:30, and that he

11   traveled from there to the Harrisburg International Airport,

12   and then approximately 3:45, the flight departed for -- I

13   don't know if it was a direct flight, but his flight departed

14   at that time.

15        THE COURT:  When you said 10:30, I'm assuming you

16   mean he left Moshannon Valley Processing Center at 10:30 a.m.?

17        MS. IRWIN:  Yes.  Yes.

18        THE COURT:  Then he traveled to the Middle District

19   to Harrisburg Internation Airport for the departure at 3:45?

20        MS. IRWIN:  Yes.

21        THE COURT:  Attorney Irwin, what type of documents do

22   you believe are in your client's possession that would time

23   stamp or detail his exact movements as to when he left the

24   processing center and when he arrived at the airport?

25        MS. IRWIN:  I don't know of any at this time.  I've

1    not dug that deep.  I'm sorry.  This is Laura Irwin again.  I

2    don't have any documents at this time, but I'm happy to

3    investigate to see what documents there are.

4              THE COURT:  Okay.

5              MS. IRWIN:  I would add, however, that we do have --

6    I'm just looking back at the declaration that was filed.  We

7    have the declaration that says that he left approximately

8    10:30 a.m.  That's Paragraph 14 of -- I'm not sure whose

9    declaration that is.  But Your Honor --

10              MR. IVORY:  This is Michael Ivory on behalf of

11    Respondents.  That would be at Document No. 26-5 that was

12    filed yesterday, and Ms. Irwin is correct that is reflected as

13    Paragraph 14 of that declaration.

14              THE COURT:  All right.  So it is the position of the

15    Respondents that A.S.R. began his movement out of the

16    Moshannon Valley Processing Center before the habeas petition

17    was even filed?

18              MS. IRWIN:  Yes, it is.  Based on the information

19    that we have, he left at approximately 10:30.

20              THE COURT:  Okay.

21              MR. GELERNT:  This is Mr. Gelernt.  I'll wait until

22    you call on me.

23              THE COURT:  Go ahead.  I'll allow you to respond from

24    the Petitioner's perspective.

25              MR. GELERNT:  I think the "approximately 10:30" is a

1    little tricky, since it was filed at 10:28.

2         THE COURT:  10:38.

3         MR. GELERNT:  And even if he was removed from

4    Moshannon at 10:30, after the petition was filed, the

5    jurisdiction was set, so we don't see that argument really

6    being made by the government.  The other thing I would say is

7    he had actually been out of the district before the petition.

8    The fact that he is not in Moshannon doesn't really matter

9    because he is in the government's custody until he crossed

10   over into another district.

11        And I would also say that we don't understate the habeas

12   law.  If we don't know where Petitioner is confined, then you

13   still have jurisdiction.  So I'm a little bit perplexed at how

14   the government is saying based on approximations that you no

15   longer have jurisdiction over this habeas petition.

16        THE COURT:  All right.  I'll allow the Respondents to

17   reply to that before I ask my next question.

18        MS. IRWIN:  This is Laura Irwin.  In all frankness

19   with the Court, this was just filed last night, and

20   understanding this was a status conference, we are not fully

21   prepared to address the merits.  We were asked by Your Honor

22   these factual questions, and we are providing that

23   information.  If the Court would like further briefing on it,

24   we are happy to do that, but we are somewhat caught off guard.

25        Also bearing in mind that we are hearing several

1    different times.  Mr. Gelernt just said the petition was filed
2    at 10:28.  The information we received from the clerk's office
3    was that it was filed at 10:54.  I realize that -- one of the
4    problems is that we don't have Greenwich Mean Time on all of
5    our phones, so there is some imprecision, as well as when you
6    receive a pleading that has initials and not a name, they can
7    extend that -- what I'm hearing is that we may have acted to
8    avoid jurisdiction by moving him.  We wouldn't have known who
9    he was.  There are 1,400 people at Moshannon.  We have had
10   numerous TROs filed with initials that don't even correspond
11   to the person's name for anonymity, so I appreciate the
12   concern, but we are not really in a position where we can
13   provide a fulsome answer.
14        MR. GELERNT:  This is Lee Gelernt.  I think it would
15   be important for the government to provide some information
16   about exactly when he was taken out of the district, but the
17   other thing I would say, and I think that because this is a
18   class action, even if they have moved some individual, I think
19   that we probably would still have jurisdiction in your court,
20   but I do think that we probably need more precise information.
21        We are happy to put in a different named Plaintiff,
22   and I think our purpose here in this discussion is not to say
23   that the government purposely avoided your Court's
24   jurisdiction, but just to get to the bottom of it.  And I
25   think ultimately we would put in a different named Plaintiff

1    if we had, but I think that he was probably still in your

2    district, whether in Moshannon or in a car at the time of

3    filing.  But, of course, if the government has precise

4    information about when the car left the district, we would be

5    interested in hearing that.

6                THE COURT:  All right.

7                MS. IRWIN:  This Laura Irwin.

8                THE COURT:  Go ahead.

9                MS. IRWIN:  Just to respond briefly, again, to not

10   get into the weeds too much, but when you say it is a class

11   action, it hasn't been certified as a class action, and we

12   don't know who any of these punitive members are.

13               It also -- while I will certainly make every effort

14   to find out what time he left Moshannon Valley, I would be

15   very surprised if someone is keeping track of when they cross

16   from Clearfield County into Center County.  So I don't want to

17   mislead anyone to believe that we are going to be able to

18   identify with any level of specificity when he left the

19   district.  I think the best we are going to be able to hope

20   for is when he left the facility, unless there's a super giant

21   sign that everybody sees when they leave one county and go

22   into another.

23               MR. GELERNT:  In that case, then we would say that

24   Your Honor has jurisdiction, because at that point, there is

25   either no way to know who is confining him or if he was in,

1    but I don't think that the government can say there is no

2    jurisdiction.

3           And on the class action, obviously we could put in

4    someone else as a named Plaintiff.  I don't think given these

5    facts at this point we need to do that.

6           The other thing I would say, Your Honor -- well, Your

7    Honor, I would leave it there and wait for your other

8    questions.  Thank you.

9           THE COURT:  All right.  Well, my follow-up question,

10   my final question -- I talked about the two periods of time I

11   was interested in, but it appears that the first period of

12   time from the filing of the petition in the morning until my

13   Order at 3:12, it does appear that the representations that

14   were being made to me by the Respondents, that he was out of

15   the facility, out of the district, and departing via aircraft

16   for Texas and the Northern District around 3:45.

17          My second timeframe I was interested in was the

18   timeframe from 3:12 yesterday afternoon when I filed my Order

19   until the present time, what his whereabouts and movements

20   were.  And I'll let the Respondents, if there is anything to

21   add on this new time period, but it appears that I've heard

22   what your understanding is as to where he is now and how he

23   got there and when, but I will open it up to either party.  If

24   there is anything they want to add on that, my second period

25   of time from the entry of my Order until the present time.

1    Anything from the Petitioner other than, you know, not really

2    sure?

3         MR. GELERNT:  I think he is in Bluebonnet, and I

4    think Respondents have confirmed that.  I don't know that.  We

5    are having trouble -- the immigration lawyer that represents

6    him is having trouble reaching him, but I believe the

7    government is in agreement that he was at the Bluebonnet

8    facility in the Northern District of Texas.

9         THE COURT:  Anything additional from the Respondents?

10        MS. IRWIN:  Your Honor, we did not investigate the

11   timeframe or his movements once he departed at 3:45 other than

12   to verify that he is at Bluebonnet, so I can't tell you when

13   he arrived there or changed planes or any of those things, but

14   according to the information we have as represented in our

15   filing, he is at Bluebonnet.

16        THE COURT:  All right.  Thank you.  So the next

17   question I have is, it sounds like to the Court there are some

18   still-unanswered questions and some necessary additional

19   briefings that need to occur, so the viability of the hearing

20   scheduled tomorrow at 11:00 a.m. on Petitioner's emergency

21   application for a Temporary Retraining Order, when it appears

22   from the representations of the Respondent that he may have

23   left this jurisdiction even before the habeas petition was

24   filed, but definitely before my Order at Document No. 8 was

25   entered, so just from a general sense, I'm interested in

1    hearing from the parties as to the viability of tomorrow's

2    hearing at 11:00.

3            MR. GELERNT:  This is Lee Gelernt for Petitioner.  I

4    think what you said makes sense.  We would suggest that that

5    hearing not occur tomorrow, and we actually think that what

6    might make sense at this point is to have preliminary

7    injunction briefings and do it on an expedited basis within

8    the 14-day period that is for TROs.  We are prepared to file a

9    preliminary injunction brief very quickly, and then the

10   government obviously in its opposition can say whether they

11   think he was out of the district before the petition was

12   filed, and then have a hearing on the preliminary injunction.

13   I think probably doing a TRO and then PI so quickly doesn't

14   make sense.

15           I would just add we are very, very concerned about

16   the Petitioner being at Bluebonnet.  What we know from doing

17   these cases around the country is that Venezuelan men who have

18   been unilaterally tagged by the administration as being part

19   of the TDA are being moved from all the over the country to

20   the Bluebonnet facility in Texas, and it is different from

21   what happened the first time around when they were moved to

22   the Southern District of Texas, but there is a TRO there now,

23   and the government has now said, notwithstanding the Supreme

24   Court's decision that people are entitled to notice and

25   sufficient notice to get into court to challenge their

1    designation under the Alien Enemies Act, that the government

2    has taken the position that they may give us a little as 24

3    hours and not actually serve it on counsel.  So that would

4    mean the Petitioner could be gone at any moment.

5         And as I'm sure Your Honor knows from public media

6    that the government is taking the position that once they are

7    in El Salvador in prison, they can't be brought back.  So we

8    could be looking at a lifetime consequence for this

9    individual.

10        So the last thing I would say about this is

11   Mr. O'Neil's declaration is very, very carefully written.

12   What it says is no one currently at Moshannon has been

13   designated, and then as to this Petitioner, it says he is in

14   immigration proceedings, but it doesn't say he isn't or won't

15   be designated.  And so people in immigration cities are

16   exactly the people they have designated for Alien Enemies Act

17   removal.  That's what happened the first time around, and

18   that's what we are anticipating again, so that they bypass the

19   immigration proceedings.  So given that, and given that the

20   government is saying they may give us as little as 24 hours

21   notice, and in the declaration, you did not disown that

22   24-hour period and did say they are going to give what they

23   consider to be reasonable notice, we would ask the TRO remain

24   in place for 14 days, and the Court have expedited briefing

25   for that with a preliminary injunction hearing to follow.

```
1          THE COURT:  Let me ask you this question.  Are you
2    aware of any other specific detainees at Moshannon Valley that
3    are like A.S.R., that have been designated the way A.S.R.,
4    because I do notice in your caption that A.S.R., he is the
5    only pseudonym, he or she, that's the only pseudonym used, so
6    are you aware of any other detainees at Moshannon Valley that
7    fit this category that you're asking for?
8          MR. GELERNT:  Right.  We are, Your Honor.  Just to be
9    clear, so I don't -- we are not aware of anybody who has been
10   designated, because I think what the government is going to do
11   is move them to Texas first is what our understanding is, and
12   then designate them and give them only 24 hours, but we are
13   aware of people who fit this profile, Venezuelan men who have
14   been tagged with being TBA at Moshannon.  We aware of six
15   right now, but one of the problems is that there are no longer
16   legal service organizations allowed in based on the executive
17   Orders coming from obviously outside this case that are
18   shutting down legal service organizations from going into
19   detention facilities; otherwise, I think we would know about
20   many, many more, but at least six.  So we are worried about
21   the Petitioner already being in Texas, and we are worried
22   about people being immediately designated and moved to Texas
23   from Moshannon and then getting almost no notice and all of a
24   sudden being in a Salvadoran prison where they probably -- I
25   know the government will take the position that they can't be
```

1    returned even if there is a mistake, so I think those are our

2    concerns why we would respectfully ask that the Court keep the

3    TRO for 14 days and the preliminary injunction briefing, which

4    is what has been happening throughout the country so far in

5    the Southern District of Texas; in Colorado there are

6    individual TROs; in Chicago; in California.  There is also a

7    class TRO in New York, and all the courts have generally

8    acknowledged that if they can't rule, people could end up

9    forever in a Salvadoran prison, so they have then moved things

10   to a PI status very, very quickly and scheduled expedited

11   preliminary injunction hearings, so that's what we could ask

12   of Your Honor.

13          THE COURT:  Thank you.  I'll hear from the

14   Respondents.

15          MS. IRWIN:  This is Laura Irwin, Your Honor.  I'll

16   start with the claims about the amount of notice and the

17   service information that's been provided and the allegation

18   that they will never be brought back from El Salvador.  I'm

19   not sure where that information is coming from.  It's not

20   contained in our pleading.  We have not said that there is

21   going to be 24 hours notice and no service on counsel or

22   anything about what would happen once they are removed from

23   the United States.  So that's information that's not of

24   record, and I don't think it has a bearing on, unless they are

25   able to provide affidavits or some other information to that

1    effect.

2              As far as, you know, keeping the TRO in place and

3    moving on to a PI, it is our position that we provided a

4    fulsome brief for Your Honor to consider, and that there is

5    ample information for the Court to resolve the TRO.  And so we

6    believe that we can go forward at this time.

7              THE COURT:  Can you go forward tomorrow?  Or based on

8    your briefing?

9              MS. IRWIN:  With respect to tomorrow, we believe that

10   we can go forward on the briefing.  I will say that in

11   communications with Mr. Walczak, he has indicated that he has

12   personal issues that keep him out of state.  Another lawyer

13   has some medical condition.  And so we understand -- if

14   tomorrow is not available, we understand that.  But we don't

15   really believe that this needs to go to a PI.

16             THE COURT:  Okay.

17             MR. WALCZAK:  Wit Walczak here, if I can just briefly

18   be heard.  What Ms. Irwin references is that in talking to the

19   government, we were going to approach the Court about doing it

20   remotely, just because, as Ms. Irwin mentioned, I'm out of

21   town, out of state dealing with an ailing parent that's dying,

22   has a medical condition.

23             But let me just say that I heard Your Honor say that

24   -- and maybe I misheard, but that there is a decent argument

25   that jurisdiction may not be in this Court, but I have to say

1    the information we have, our client's immigration lawyer
2    received information directly from ICE agents at Moshannon
3    well after 11:00 that morning saying that the client was still
4    there, and saying that they left at approximately 10:30 is
5    quite convenient since this habeas was filed at 10:38.  But we
6    would definitely ask for proof of the fact when he left and
7    when he left the jurisdiction, so I think not only do we need
8    to sort of probably unpack some of the legal questions a
9    little bit more, I do think there is a factual dispute here.

10           It is very important, potentially critical, to the
11   Court's jurisdiction that is going to need to be heard.  I
12   don't think that can be heard tomorrow, but I think as
13   Mr. Gelernt suggests, it could be heard in short order on a PI
14   briefing.  And under Rule 65, Your Honor could extend the TRO
15   that you've already entered for a full 14 days, and that's
16   renewable once, and it certainly seems like that's a time
17   period that's sufficient to do and then also resolve any
18   factual disputes.

19           THE COURT:  Well, I appreciate that.  I already have
20   decided that I am going to order briefing.  The first briefing
21   that's going to occur is jurisdiction, because I'm not going
22   to obviously reach a briefing or make decisions on preliminary
23   injunctions or anything like that when I have a question as to
24   whether or not this Court has jurisdiction over this matter
25   based on what I've read and what I've heard today.

1          So I'll be entering an Order soon after we finish up

2     here today that will detail the initial set of briefs that

3     I'll be interested in receiving from the parties, as well as

4     deadlines for those briefs, and it will be specific to

5     jurisdictional issues.  And I'll encourage the parties when

6     they are making their arguments that if there are attachments

7     or exhibits that further solidify their arguments in a

8     convincing fashion, some of the things I talked about, you

9     know, I don't know how it works, if there is a timestamp as to

10    when a detainee leaves the facility, when they out-process,

11    in-process, anything like that would be of great interest as

12    an attachment to the jurisdictional briefing that the Court

13    will ask first and foremost from the parties.

14         With that, I'll ask if there are any questions from

15    the Petitioner as to how we are going to immediately move

16    forward?

17         MR. GELERNT:  That all sounds fine.  I assume that

18    Your Honor will keep the TRO in place, and I would just say as

19    to this 24-hour period, that was said in the Southern District

20    of Texas hearing last week, and I assume that main justice

21    would not deny that they said that in the hearing.

22         As to whether the government is willing to bring

23    people back from El Salvador, you can just turn on the TV

24    literally any second and know that that's President Trump's

25    view, that he would not bring people back from the Salvadoran

1    prison, and while we certainly can put in the affidavit the

2    President's own words saying we are not bringing people back;

3    it's also gone to the Supreme Court.  And if the government

4    wants to now say that notwithstanding main justice's view that

5    it may be as short as 24 hours, they intend to give longer

6    than that and serve it on Petitioner's counsel, we would

7    welcome that concession, but otherwise, we would ask that you

8    keep the TRO in place.  So we will have that targeted briefing

9    on Your Honor's question about jurisdiction and timing.

10          And we would also respectfully ask that we be able to

11   put in a reply brief for a TRO.  We have a number of

12   declarations that go directly to response to the government's

13   declaration, and I think given the importance of this case and

14   the gravity of using military law for the first time in a

15   nonmilitary setting, I think it would be worth the Court

16   having as fulsome briefing as possible, so that's where we

17   are, Your Honor.

18          THE COURT:  Thank you.  Any questions from the

19   Respondents as to how we are going to move forward

20   immediately?

21          MS. IRWIN:  No, Your Honor.  That sounds fine.  We

22   look forward to seeing your Order and filing.

23          THE COURT:  All right.

24          MR. WALCZAK:  I'm not sure if Your Honor was going to

25   address this, but we need to know whether or not the hearing

1    is on tomorrow.

2         THE COURT:  No.  That's a great question, and no, I'm

3    going to continue until further Order of Court the hearing

4    that is scheduled for 11:00 tomorrow based upon the necessity

5    of additional briefing that must take place in preparation of

6    the occurrence of that hearing.

7         Like I stated, we are going to enter the Order

8    immediately after the hearing here this afternoon about the

9    jurisdictional issue, and recognizing that I need briefings

10   from both, I'm going to ask for those briefs to be filed

11   simultaneously with one another, and I'll ask that those

12   briefs be filed by the parties by Tuesday, which is

13   April 22nd, on the issue that we will spell out in our Order

14   exactly what we are looking for.

15        MR. GELERNT:  That's fine with Petitioner, Your

16   Honor.  This is Lee Gelernt.

17        THE COURT:  All right.  Does that work for

18   Respondents as well?  The jurisdictional issue briefs will be

19   due April 22nd.

20        MS. IRWIN:  Yes, Your Honor.

21        THE COURT:  All right.  The Court will enter any

22   further additional Orders that are necessary with that

23   schedule in mind.  All right.  With that, I think we've

24   covered everything we need to cover.

25        One last time, anything further from the Petitioner

1    that we need to address at this time?

2              MR. GELERNT:  No, Your Honor.  Thank you.

3              THE COURT:  Thank you.  Anything further from the

4    Respondents?

5              MS. IRWIN:  No, Your Honor.  Thank you.

6              THE COURT:  All right.  Thank you all so much and the

7    Orders will be forthcoming from the Court.

8              MS. IRWIN:  Thank you.

9              MR. GELERNT:  Thank you.

10                       (Matter concluded)

11                            -----

12                    C E R T I F I C A T E

13              I, TERESA M. BENSON, RMR, FCRR, certify that the
      foregoing is a correct transcript from the record of
14    proceedings in the above-entitled case.

15         S\ Teresa M. Benson
           Teresa M. Benson, RMR, FCRR
16         Official Court Reporter

17         4/21/25

18

19

20

21

22

23

24

25