# Exhibit J

**DECLARATION OF SOM-MAI NGUYEN**

I, Som-Mai Nguyen, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge and belief:

1. I am a staff attorney with the Pennsylvania Immigrant Family Unity Project ("PAIFUP") team at the Nationalities Service Center ("NSC"). NSC is a nonprofit refugee resettlement agency and legal services provider in Philadelphia, Pennsylvania. As a collaborative of nonprofit legal service providers from across the state, PAIFUP (which includes NSC, PIRC, and HIAS Pennsylvania) is the primary—near sole—source of free legal services for noncitizens detained by Immigrations and Customs Enforcement ("ICE") at the Moshannon Valley Processing Center ("Moshannon").

2. Moshannon has the capacity to detain 1,878 people. As of February 11, 2025, the facility held 1,447 individuals.

3. There is no physical court location that handles detained cases from Moshannon in Pennsylvania following the contract termination with the York County Prison and the closure of the York Immigration Court in August 2021. As a result, all Moshannon cases are heard via video teleconference (VTC) by the Elizabeth Immigration Court in Elizabeth, New Jersey. As of March 2025, 381 of 515 (74%) detained cases docketed at Elizabeth were for unrepresented (*pro se*) individuals who do not have an attorney to help them draft a habeas petition. For these individuals in particular, possessing information about where and how to file a habeas petition is essential to their ability to advocate for themselves.

4. Because all Moshannon cases are heard via video by the Elizabeth Immigration Court, *pro se* litigants must submit all court filings via regular mail; submission in person or via the internet is not permitted. Electronic scans and faxes are not feasible alternatives to using regular mail for legal filings, or even for sending drafts to a family member to file electronically, as case managers can grant or deny such requests at their discretion. Mail processing out of Moshannon is slow, and shipments regularly take days, or even more than a week, to arrive at their destination.

5. To prepare a habeas petition *pro se* while detained at Moshannon, the unrepresented litigant would begin by visiting the law library, using the computers to write a draft, and then asking a case manager to help print any relevant documents. However, the law library is available to each housing block only one day a week, on a rotating schedule. For instance, a given detainee may only be able to visit the law library for five hours each Friday to work on his or her habeas petition, while access to the library at other times for that individual would be prohibited. Once a petition is printed, the individual would then need to give it to facility staff to mail. The length of time it takes for outgoing packages to be mailed, however, is highly variable and subject to staff discretion.

6. The experiences of NSC's clients highlight the limitations detainees face in effectively utilizing the law library. One former client of NSC, for example, worked in the law library at Moshannon for several months in 2023. He reported that there were about seven computers with access to LexisNexis, a legal search engine, but no other websites. There was one law librarian, who spoke only English.

7. Considering these limitations on access to the law library, being permitted 24 hours to complete a habeas petition would not translate, in practice, to actually having 24 hours to do so; instead, a Moshannon detainee would have only five hours to complete their filing before being barred from the library for the week. If the 24-hour period fell during a time when the detainee's housing block was not slated to visit the library, it could mean no time at all to finish (or even begin) a legal filing. This reality is so despite the Performance-Based National Detention Standards' requirement that detained individuals be permitted to access the law library for no fewer than 15 hours per week.

8. Language access is also a severe and ongoing problem at Moshannon. This creates additional obstacles to the effective filing of a habeas petition, as detained noncitizens with limited English proficiency are often unable to access the legal resources that would enable them to do so, especially in an expedited timeframe. As documented through complaints to DHS's former Office for Civil Rights and Civil Liberties, it is common for noncitizens who do not speak English, or who are illiterate, to receive documents in English from ICE without any translated versions accompanying them. In fact, a 2024 survey of detained noncitizens found that only 19% reported that their law library provided translated materials in their primary language.[1] Moshannon is no different.

9. In the event that a *pro se* detainee has questions about how to draft a habeas petition or wishes to confirm the filing rules for a particular jurisdiction, their only recourse is to call the Johnstown courthouse in the Western District of Pennsylvania. If the individual who answers the phone does not speak English, the detainee may call the court back with someone who can interpret for them. If they could not find anyone, they would simply not receive the information.

10. The Nationalities Service Center has represented numerous individuals who are illiterate in their native language. Many of these clients have expressed to our attorneys that they do not understand the process of requesting a visit to the law library and are unable to use the legal materials available in the law library due to their lack of literacy.

11. Finally, it is extremely difficult for *pro se* individuals detained at Moshannon to consult with an attorney at all, let alone within 12 hours of receiving notice that they must do so.

---

[1] BENJAMIN N. CARDOZO SCHOOL OF LAW, HELD INCOMMUNICADO: THE FAILED PROMISE OF LANGUAGE ACCESS IN IMMIGRATION DETENTION 9 (2024).

    One reason for this is simply Moshannon's geographic location: the facility is situated in a remote area of Pennsylvania and has only two attorney visitation rooms that serve the entire facility. Many attorneys, including the staff at NSC, primarily conduct legal meetings via phone and video.

12. To speak to a client via a confidential video call, attorneys are generally only able to arrange a call 2–10 days after the date of the request. In addition, legal calls can only be scheduled before afternoon count, which is at approximately 3:30 PM.

13. When detainees are transferred away from Moshannon, which often happens suddenly and without the knowledge of the noncitizen's attorney, reaching counsel is even more difficult. Because case managers are often slower to respond to attorneys seeking calls after a transfer has occurred, days can elapse before attorneys are aware of an individual's location. And because a detainee's Global Tel*Link (GTL) account, which provides a non-confidential way of messaging an attorney or family member, is typically turned off the night before the person is set to be moved, detainees often have no means by which to notify anyone of their impending transfer.

14. The second, and more important, limitation on attorney access stems from the incredibly small number of *pro bono* legal service providers that serve those detained at Moshannon. PAIFUP, for instance, is staffed by just 15 attorneys and law clerks from three legal service providers: NSC, HIAS Pennsylvania, and PIRC. Currently, PAIFUP can only represent individuals with ties to Philadelphia, Allegheny, Montgomery, and Delaware Counties. Some staff members are only partially funded to do PAIFUP work, which further limits capacity. At NSC, only two of seven PAIFUP attorneys have an active federal court practice. This means that NSC can take only a small fraction of the hundreds of *pro se* litigants who request our office's legal assistance each year.

15. Even when PAIFUP can represent a detained non-citizen at Moshannon, the process takes time to complete. Typically, after a detainee calls PAIFUP's intake line, a coordinating staff member arranges a legal screening call with that person within 2–10 days. Following that initial screening, the noncitizen's information is shared with our legal staff to assess whether an attorney can accept the case for representation. This entire process, from initial outreach to determining if an individual is going to be represented by PAIFUP *pro bono*, takes approximately three weeks. As such, and given PAIFUP's tremendous resource constraints, it would be logistically impossible for a *pro se* litigant seeking immediate (or same-day) assistance with a habeas petition to obtain it from a PAIFUP staff member.

16. In sum, it is nearly impossible for *pro se* individuals detained at Moshannon to file a habeas petition within 14 days, and outright impossible in under 36 hours. Even obtaining a full consultation with an attorney within two weeks, let alone 12 hours, would be exceedingly difficult in light of the facility's longstanding issues with detainee access to legal information, language services, and affordable legal representation, as outlined above.

Executed this 29th day of April 2025 in Philadelphia, PA.

*/s/ Som-Mai Nguyen*

Som-Mai Nguyen
Nationalities Service Center
1216 Arch St., 4th Floor
Philadelphia, PA 19107
(267) 807-9394
snguyen@nscphila.org
