IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| A.S.R., individually and on behalf of all others similarly situated,<br><br>*Petitioner–Plaintiff*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>*Respondents–Defendants*. | Case No. 3:25-cv-00113<br><br>Judge Stephanie L. Haines |

**PETITIONER-PLAINTIFF'S MOTION FOR RECONSIDERATION OF CLASS DECERTIFICATION**

Petitioner-Plaintiff ("Petitioner") respectfully moves for reconsideration of the Court's order decertifying the class, ECF No. 74 ("Op."), in light of the Supreme Court's recent ruling. The Supreme Court stated with respect to a district-wide putative class: "[W]e are skeptical of the self-defeating notion that the right to the *notice* necessary to actually seek habeas relief must *itself* be vindicated through individual habeas petitions, somehow by plaintiffs who have not received notice." *A.A.R.P. v. Trump*, No. 24A1007, 2025 WL 1417281, at *4 (U.S. May 16, 2025) (cleaned up). This is precisely the situation in which class treatment is necessary. Multiple courts across the country addressing challenges to removal under the Alien Enemies Act ("AEA") have certified district-wide habeas classes similar to the one Petitioner seeks here. *See J.A.V. v. Trump*, No. 1:25-CV-072, 2025 WL 1256996, *6 (S.D. Tex. May 1, 2025) (Rodriguez, J.); *D.B.U. v. Trump*, No. 1:25-CV-01163, 2025 WL 1304198, *10 (D. Colo. May 6, 2025) (Sweeney, J.); *G.F.F. v. Trump*, 348 F.R.D. 586, 589 (S.D.N.Y. 2025), *amended*, 2025 WL 1166909 (Apr. 11, 2025) (Hellerstein, J.). And since this Court's decertification order, the Supreme Court's May 16 order automatically

1

vacated the only other denial of class certification in an AEA case, *A.A.R.P.*, 2025 WL 1417281, at *3 n.1, and the Court "enjoin[ed] the Government from removing putative class members while the question of what notice is due is adjudicated," explaining that all putative class members were entitled to "the same" notice, *id*. at *3.[1]

This Court initially certified a district-wide class, ECF No. 45, but several weeks later sua sponte decertified the class on the ground that numerosity had not been satisfied, ECF No. 74. Petitioner now moves for reconsideration of this Court's decertification decision. The proposed class is inherently transitory, consisting of a detained population whom the government can transfer between judicial districts at will—as illustrated by Petitioner's case. Respondents-Defendants ("Respondents") control access to information about putative class members' identity, the putative class members' access to communication with attorneys, and how long putative class members remain detained within the District before they may be swiftly transferred and then issued a notice elsewhere. Most fundamentally, because the government has not disclaimed the right to swiftly remove individuals with minimal notice, individuals in this District could be removed and sent to CECOT before ever having had the chance to seek judicial relief. In this extraordinary context, where the Supreme Court has recognized detainees' "weighty" interests because the government claims any unlawful removals cannot be undone, *A.A.R.P.*, 2025 WL 1417281, at *2, joinder is impracticable and class certification is proper.

---

[1] Since then, two other district courts have granted or extended existing temporary restraining orders for putative district-wide classes of individuals similarly situated to Petitioner. *See M.A.P.S. v. Garite*, No. 25-cv-171 (W.D. Tex. May 16, 2025), ECF No. 31 (extending TRO); *Arevalo Millan v. Trump*, No. 25-cv-1207 (C.D. Cal. May 19, 2025), ECF No. 6 (granting TRO).

**ARGUMENT**

The class should be re-certified because numerosity is satisfied where the class is transitory and includes future class members, there are high barriers for individual class members to bring their own challenges, and there is evidence of specific cases, as A.S.R.'s case demonstrates. The fact that Petitioner had counsel who moved with utmost dispatch and was nonetheless still removed before the Court ruled and is not now detained within the District illustrates the need for class certification to prevent the harms of AEA designation and lack of notice from evading review. Consistent with the Supreme Court's recent decision in *A.A.R.P.*, class treatment is warranted: otherwise, individuals detained in this District may never obtain judicial review. 2025 WL 1417281 at *3.

In determining numerosity for purposes of class certification, this Court faces "a binary choice": "a class action versus joinder of all interested parties." *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 253 (3d Cir. 2016), *as amended* (Sept. 29, 2016) (relying on text of Rule 23). The factors "of primary importance" in weighing this binary choice are "judicial economy and the ability to litigate as joined parties." *Id.* at 253.[2]

*First*, the Supreme Court has repeatedly held that an "inherently transitory" class warrants certification, even absent a named plaintiff currently within the class definition. *See*, *e.g.*, *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51-52 (1991); *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975). "The Supreme Court crafted" this class treatment of inherently transitory claims "in injunctive class actions challenging criminal and immigration detention procedures." *J.D. v. Azar*,

---

[2] The Court relied on *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65 (D.N.J. 1993), for the factors that make joinder practicable, Op. at 4, but that case's directive to examine "whether proposed members of the class would be able to pursue remedies on an individual basis" is no longer good law. *In re Modafinil*, 837 F.3d at 253 (analysis "do[es] *not* consider the possibility that plaintiffs may bring individual suits").

925 F.3d 1291, 1308 (D.C. Cir. 2019). In *Nielsen v. Preap*, Justice Alito explained that even if there is *no* named plaintiff with a live claim at the time of class certification, certification in immigration detention cases is still possible because "the harms alleged are transitory enough to elude review" otherwise. 586 U.S. 392, 403-04 (2019) (plurality opinion) (because injury due to detention pending a removal decision "ends as soon as the decision on removal is made, it is transitory").[3]

Class certification is similarly warranted here for this inherently transitory class of detained individuals whom Respondents can move at will and who, under the government's view, can be removed with virtually no notice. The fact that A.S.R. is not *currently* detained within this District, due to the unilateral actions of Respondents in moving his custody, highlights how Respondents' transfer of putative class members threatens to prevent them from obtaining meaningful judicial review absent certification: future members will move into the district and potentially be moved before they, too, can assert any claims.

The fact that the proposed class includes *future* members further makes joinder impracticable. In such circumstances, the class members are "necessarily unidentifiable and thus their joinder is certainly impracticable"—all the more so because the class is inherently transitory. *Lanning v. Se. Pa. Transp. Auth.*, 176 F.R.D. 132, 148 (E.D. Pa. 1997)(cleaned up) ); *Victory*, 2019 WL 2950171 at *25.

*Second*, it is extremely difficult even to identify class members who are *now* currently detained at the Moshannon Valley Processing Center ("Moshannon"), and class members may also

---

[3] District courts within the Third Circuit have thus recognized that class certification is appropriate at detention centers, including in the immigration context. *E.g.*, *Victory v. Berks Cnty.*, No. 18-5170, 2019 WL 2950171, at *24 (E.D. Pa. July 8, 2019) (collecting cases); *Thakker v. Doll*, 336 F.R.D. 408, 415 (M.D. Pa. 2020). "The fact that the membership and size of a class may vary over time as detainees are transferred away from or introduced into [immigration detention centers] enhances the desirability of using a plaintiff class." *Thakker*, 336 F.R.D. at 415 (cleaned up).

be detained at another facility, the Erie County jail, *see* https://www.justice.gov/eoir/immigration-court-administrative-control-list (listing the jail as an operative detention site). The government has refused to provide a list or other information about the people it is detaining for removal under the AEA. Even absent practical barriers, the speed with which detainees could be removed or transferred would make class treatment proper. But there are significant barriers for detained immigrants to finding counsel, including to communicating with Petitioner's counsel. *See* ECF No. 57-11 (Nguyen Decl.) ¶¶ 3–16 (describing barriers for noncitizens detained at Moshannon); ECF No. 57-10 (Brunsink Decl.) ¶¶ 8–12 (same). Attorneys who visit detention facilities can only meet with detainees whose names they provide in advance—requiring them, of course, to know the names of AEA-designated individuals or those deemed by the government as potential AEA designees. Most people in immigration detention do not have any attorney at all. ECF No. 57-11 ¶ 3 (74% of detained cases are unrepresented). Access to detainees at Moshannon through Legal Orientation Programs has ended, ECF No. 57-10 ¶ 7. And absent the ability to find and communicate with counsel, detainees have no real way to join this litigation—or even to file habeas petitions pro se. *See generally* ECF No. 57-11; *see also id.* ¶ 4 (filing alone likely to take days or even more than a week). Indeed, Petitioner's counsel is unaware of any unrepresented detainee who has managed to file a pro se habeas petition on their own—in this District or any other—to challenge their AEA removal.

When decertifying the class, the Court found that the "ease of identifying members" favored denial of class certification because the Court held that individuals subject to the Proclamation must receive 21 days' notice ahead of removal. Op. 6. Yet, the Court later clarified that its decision did *not* apply beyond A.S.R. and already, one individual, who has pro bono

5

representation, has had to seek relief from the Court because of his imminent risk of transfer and removal. *W.J.C.C. v. Trump*, No. 25-cv-153-SLH (W.D. Pa. May 21, 2025).

*Third*, the evidence in Petitioner's motion for class certification shows that there were six other specific cases of individuals who had been detained at Moshannon and were subject to the Proclamation, including individuals removed to CECOT on March 15, 2025, and who the government claims it has no power to return even if their removal was unlawful because they received no opportunity to challenge their designation. ECF No. 5 at 3 n.3.[4] Additionally, Petitioner presented information about the capacity of the Moshannon detention facility and the facility's role as a detention hub in the region that continues to see enforcement against alleged Tren de Aragua members. *Id.* at 1–2, 9–10. These seven individuals (counting Petitioner) were merely those whom Petitioner's counsel has been able to learn about—primarily through the events surrounding the government's initial efforts to send detainees to CECOT under the AEA.

The Court's decertification order cited the government's representation that "to its knowledge, there are *currently* zero individuals in the Western District of Pennsylvania who have been designated under the AEA." Op. 5 (emphasis added). At the May 19 status conference, the government again represented that no one currently in the District had been designated. But the government did not state that there was no one who might be designated in the future, and as this Court properly recognized as to A.S.R. himself, the lack of designation does not mean there is no substantial risk for individuals deemed by the government to be affiliated with TdA . ECF No. 72 at 14, 17–18 ("[T]he Court readily finds that he had standing" where government had alleged TdA membership and thus there was "substantial risk" of removal under the AEA); *see also id.* at 17–

---

[4] Petitioner's motion also identified two individuals located within Pennsylvania who were deported to CECOT. ECF No. 5 at 5 n.7.

6

18 (government could still subject A.S.R. to Proclamation). Moreover, just two days later, W.J.C.C., who ICE has accused of membership in or affiliation with TdA, received notice of his imminent transfer to a detention facility in Louisiana used for staging deportations. *W.J.C.C. v. Trump*, No. 25-cv-153-SLH, ECF No. 1 ¶¶ 31-33.

Just five days ago, this Court granted a temporary restraining order in recognition of "the extreme speed at which removal from this District may occur and the irreparable consequences of the Court's potential loss of jurisdiction." *W.J.C.C.*, No. 25-cv-153-SLH, ECF No. 4 (minute entry). The government itself has acknowledged that "the detainee population at MVPC changes on a daily basis." ECF No. 26-5 (declaration of Deputy Field Office Director David O'Neill) ¶ 18. The government controls when putative class members enter and exit the District and has repeatedly placed them within the District on a transitory basis. The government also has sole information about the number of putative class members in the District at any given time and has refused to divulge this information to Petitioner's counsel. *See* Op. at 7, n.6 noting that ICE tracks TdA members amenable to removal under the AEA). In light of the government's sole control and the number of putative class members detained in the District who have already come to light by chance, the government's snapshot representations of do not cut against class certification, particularly because the government is representing only who has been formally designated and not who is at risk of designation and quick removal to El Salvador.

This Court properly recognized that 12 to 24-hour notice was not sufficient for detainees potentially facing lifetime incommunicado imprisonment in a foreign prison. But absent class

certification, it is highly likely that individuals in this District will not get the benefit of that ruling.

Class certification is thus warranted.[5]

## CONCLUSION

The Court should re-certify the putative class, because joinder is impracticable.

Dated: May 28, 2025                                            Respectfully submitted,

*/s/ Lee Gelernt*

| | |
|---|---|
| Vanessa L. Stine (PA 319569) | Lee Gelernt (NY 2502532)** |
| Witold J. Walczak (62976) | Daniel Galindo (CA 292854)** |
| Keith Armstrong (PA 334758)* | Ashley Gorski (NY 4874228)** |
| AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA | Patrick Toomey (4983979)** |
| | Sidra Mahfooz (NY 5782693)* |
| | Omar Jadwat (NY 4118170)* |
| P.O. Box 60173 | Hina Shamsi (NY 2995579)** |
| Philadelphia, PA 19102 | AMERICAN CIVIL LIBERTIES UNION FOUNDATION |
| T: 215-592-1513 | |
| F: 267-573-3054 | 125 Broad Street, 18th Floor |
| E: vstine@aclupa.org | New York, NY 10004 |
| E: karmstrong@aclupa.org | T: (212) 549-2660 |
| | F: (212) 519-7871 |
| P.O. Box 23058 | E: lgelernt@aclu.org |
| Pittsburgh, PA 15222 | E: dgalindo@aclu.org |
| T: 412-681-7864 | E: agorski@aclu.org |
| F: 267-573-3054 | E: ptoomey@aclu.org |
| E: vwalczak@aclupa.org | E: smahfooz@aclu.org |
| | E: ojadwat@aclu.org |
| Noelle Smith (CA 344481)** | E: hshamsi@aclu.org |
| Oscar Sarabia Roman (CA 341385)** | |
| My Khanh Ngo (CA 317817)** | |
| Cody Wofsy (CA 294179)** | Attorneys for Petitioner-Plaintiff |
| | *Pro hac vice applications forthcoming* |

---

[5] Alternatively, were this Court to conclude that Petitioner has not identified a sufficient number of individuals eligible for the class who have been or currently are detained in this district, Petitioner respectfully requests that the Court defer consideration of the motion for class certification at this time to provide for factual development while "issu[ing] temporary relief to [the] putative class," "temporarily enjoin[ing] the Government from removing putative class members while the question of what notice is due is adjudicated." *A.A.R.P.*, 2025 WL 1417281, at *3. Petitioner further respectfully requests, in this circumstance, the opportunity to seek expedited discovery in support of class certification in light of the fact that only Respondent, not Petitioner, has complete access to information regarding the number of class members who have been detained within the district to date.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
T: (415) 343-0770
F: (212) 519-7871
E: nsmith@aclu.org
E: osarabia@aclu.org
E: mngo@aclu.org
E: cwofsy@aclu.org

**Admitted pro hac vice*