IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| A.S.R., individually and on behalf of all others similarly situated,<br><br>*Petitioner–Plaintiff*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>*Respondents–Defendants.* | Case No. 3:25-cv-00113 |

**PETITIONER-PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION**

**INTRODUCTION**

Reconsideration of this Court's sua sponte decertification decision is warranted, especially in light of intervening developments: information about the detention in the District of another Venezuelan national at imminent risk of removal under the Alien Enemies Act ("AEA") and the Supreme Court's decision in *A.A.R.P. v. Trump*, 145 S. Ct. 1364 (2025). Contrary to Respondents' assertions, joinder is impracticable for this inherently transitory class of noncitizens detained now *and in future*, whose presence in the District is entirely controlled by Respondents.

Respondents argue that on a particular day (June 3) there were no individuals in the District who had been "designated" under the AEA. But that fact proves little. First, it is just a snapshot of a particular day, not who has been in or will come into the District. Further, the question is not only how many have been designated, but how many are at substantial risk of designation because the government alleges they are members of TdA. Indeed, this Court has already found, repeatedly, that Petitioner has standing notwithstanding that he had yet to be designated, because he was at substantial risk of designation and swift removal given the government's TdA allegations. Petitioner has identified numerous individuals designated under the Proclamation *or* at imminent risk of designation who are currently or have been detained in this District. It is difficult for detained individuals—especially those who do not have attorneys—to communicate with undersigned counsel, and counsel cannot independently identify them. Respondents control transfers in and out of the District and have sole control over information about who in the District is at imminent risk of removal under the AEA. The goal of this Court's ruling was to ensure that individuals only alleged to be TdA members do not spend the rest of their lives in a brutal foreign prison without ever having had a chance to defend themselves against those allegations. That goal can only be fulfilled through class treatment.

1

**ARGUMENT**

I. **This Court Can Revisit Class Certification De Novo.**

Contrary to the standard that Respondents claim governs, Opp. 1–2, this Court in fact has broad discretion to revisit class decertification. That is true at any point, and it is especially warranted here given intervening factual and legal developments: information about another detained putative class member, W.J.C.C., and the Supreme Court's decision in *A.A.R.P.*

The Federal Rules permit the "revis[ion]" of "any order or other decision . . . at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see Packer v. Glenn O. Hawbaker, Inc.*, 699 F. Supp. 3d 333, 337 n.10 (M.D. Pa. 2023) (citing Fed. R. Civ. P. 54(b) as the appropriate vehicle to reconsider an order on class certification). As this Court recognized, ECF No. 74 at 2, the Rules are specific that class certification orders are subject to such revision and "may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C).

There is no heightened standard in revisiting class certification. ECF No. 74 (applying no such standard); *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 476–77 (3d Cir. 2020) (declining to apply the "stringent" Rule 59(e) standard to renewed motions for class certification, on the basis that Rule 23 has no such requirement and "allows for multiple bites at the apple throughout the litigation"). This Court's renewed consideration of class certification is *de novo*. *Hargrove*, 974 F.3d at 477; Newberg & Rubenstein on Class Actions § 7:35 (6th ed.) (renewed motion for class certification in the Third Circuit subject to ordinary Rule 23 standard). Further, Petitioner has provided significant new information that warrants renewed consideration of class certification: W.J.C.C.'s detention in the District, and the Supreme Court's decision in *A.A.R.P. See Zenith Labs.,*

*Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508, 512 (3d Cir. 1976) (court must consider whether changed factual circumstances warrant alteration of class certification order).

There is no reason to treat Petitioner's motion any differently from any other renewed look at class certification. *See Hargrove*, 974 F.3d at 476. But even under a reconsideration standard, the question for the Court is at most whether there is "good cause" for reconsideration. *See Packer*, 699 F. Supp. 3d at 337 (reconsideration of class certification is warranted where "consonant with justice" and requires only "good cause"). In light of the Court's "inherent power over interlocutory orders," especially class certification, the Court may therefore reconsider the sua sponte decertification because "it is consonant with justice to do so." *Id.* at 377 & n.9 (a class certification order "is not a final judgment"); *St. Mary's Area Water Auth. v. St. Paul Fire & Marine Ins. Co.*, 472 F. Supp. 2d 630, 632 & n.2 (M.D. Pa. 2007) (explaining that the standard for interlocutory reconsideration, that revision is permissible "when consonant with justice," is less than the "clear error" standard of Fed. R. Civ. P. 59(e)) (internal citations omitted).[1]

---

[1] As noted above, there is no reason to apply a heightened standard to revisit class certification, much less the standard for reconsideration of a final judgment. At least one district court within this Circuit has done so, but that decision predated *Hargrove* and relied on out-of-circuit cases. *City Select Auto Sales, Inc. v. David/Randall Associates, Inc.*, 96 F. Supp. 3d 403, 413 (D. N.J. 2015). At least one other, pre-*Hargrove*, said in an unpublished decision that the class certification reconsideration standard should "usually" follow the Rule 59(e) standard. *Huffman v. Prudential Ins. Co. of Am.*, No. 2:10-cv-05135, 2016 WL 9776067, at *1 n.2 (E.D. Pa. Dec. 13, 2016). But even if the Rule 59(e) standard applied, Petitioner would meet it. *A.A.R.P.* is "an intervening change in the controlling law." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (intervening change in controlling law is reason for altering or amending a final judgment). Moreover, recertification is necessary "to prevent a manifest injustice." *Id.* at 677 (additional reason for altering or amending final judgment). The government's assertion "that it is unable to provide for the return of an individual deported in error to a prison in El Salvador" and the "indefinite detention" that such individuals face are more than enough reason to revisit the class decertification decision on full briefing. *A.A.R.P.*, 145 S. Ct. at 1368.

## II. Recertification of the Class Is Warranted.

Respondents provide no meaningful reason to deny recertification of the putative class, which consists of all noncitizens detained in the District "who were, are, or *will be* subject to the March 2025 Presidential Proclamation entitled 'Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua' and/or its implementation." ECF No. 81 (emphasis added). As Respondents acknowledge, Opp. 4, Petitioner has identified, even with access to limited information, six people detained in the District and designated by the Proclamation in the short time that the Proclamation has been in effect. This is in addition to W.J.C.C., who this Court agreed is at imminent risk of such designation. *See* Op., *W.J.C.C. v. Trump*, No. 3:25-cv-00153-SLH (W.D. Pa. June 4, 2025), ECF No. 20 at 3–5. The putative class, which includes all individuals who were detained in the District and all who will be in the future, and which is inherently transitory with a composition *entirely* within Respondents' control, is thus sufficient to satisfy Rule 23. It is certainly not "zero," as Respondents argue. Opp. 3.[2]

Respondents provide a declaration from the Deputy Field Office Director for DHS Enforcement and Removal Operations' Philadelphia Field Office. Doc. 83-1. As an initial matter, the declaration erroneously focuses on who has been "designated" under the Proclamation. Respondents do not provide information as to the number of individuals detained in the District who Respondents have identified as alleged members of TdA and who therefore are at risk of future designation and swift removal under the Proclamation within 12–24 hours. But that is the relevant inquiry. As this Court correctly found, although the named Petitioner, A.S.R., had not

---

[2] This Court has authority to certify a class in a habeas proceeding, as the Court has recognized. ECF No. 45 at 1–2; ECF No. 74 at 7 n.7. *Schall v. Martin*, 467 U.S. 253, 256 (1984), is just one example of such a class. To the extent that Respondents argue the Court lacks this authority, Opp. 4 n.1, they are incorrect and the Court has already rejected that argument. ECF No. 45 at 1–3.

been designated, he had standing because he was at substantial risk given the allegations of TdA association.[3]

For example, W.J.C.C., the subject of a separate habeas petition in this District, is a Venezuelan national detained in the District whom the government has accused of being affiliated with TdA. *W.J.C.C. v. Trump*, No. 3:25-cv-00153, ECF No. 1 at 5. These characteristics place him, and anyone similarly situated in the District, at imminent risk, at any time, of designation under the Proclamation. *See id.* (holding that W.J.C.C. has shown imminent threat of removal). The government has sought to remove people rapidly after their designation in violation of their rights. *See A.A.R.P.*, 145 S. Ct. at 1368 (enjoining the government's imminent removals with notice only "roughly 24 hours before removal"). The declaration here provides no information as to how many alleged members of TdA, in addition to W.J.C.C., Respondents have previously detained and currently detain in the District. But in light of the government's control over the timing of designation, this information is essential to an understanding of the size of the putative class— which includes individuals who will be designated in the future. *See W.J.C.C.*, No. 3:25-cv-00153, ECF No. 20 at 4–5 (government "unwilling[] to conclusively say that W.J.C.C. is not subject to the AEA and the Proclamation"; "ICE has apparently reached all (or many) of the conclusions necessary to find that W.J.C.C. *is* subject to the Proclamation"; and so W.J.C.C. is under "imminent

---

[3] Respondents argue that A.S.R. lacks standing to maintain a class action, Opp. 5, but this Court has found that A.S.R. has standing and his claim is not moot. ECF No. 72 at 16–18 (A.S.R. was at minimum at "substantial risk" of removal under the AEA, and mootness exceptions applied). In addition to the mootness exceptions already relied on by the Court, *id.*, and the inherently transitory exception, *infra*, A.S.R. may also represent the class under the well-established "picking off" exception, which bars defendants from taking unilateral action to moot class claims. *Richardson v. Bledsoe*, 829 F.3d 273, 279–86 (3d Cir. 2016) (applying that exception to "relate back" a named plaintiff's class claims to the date of complaint filing, where defendants transferred the plaintiff out of the prison housing unit at issue six weeks after the operative complaint was filed and before he sought class certification); *see also A.A.R.P.*, 145 S. Ct. at 1369.

threat of removal" despite lack of formal designation). In other words, Respondents erroneously leave out the number of people detained in this District who could be subject to the AEA, but that figure is relevant to the class size given Respondents' unwillingness to agree to apply this Court's 21-day notice rule to individuals the government itself alleges to be TdA.

Equally as important, the declaration states only that *on June 3* no one was detained by ICE in the District "who ha[d] been designated under the . . . Proclamation." Doc. 83-1 at 2. The declaration provides no information on how many putative class members *have been* detained in the District since the Proclamation was issued. Likewise, it provides no assurance that individuals detained in the District will not be subject to the Proclamation *in the future*. Tellingly, despite Petitioner's argument in his opening brief that a snapshot alone does not provide meaningful information given Respondents' ability to move members of the class at will, Mot. 7, Respondents again only provide information as to the number of putative class members present in the District on a single day. This approach does not provide meaningful information about the number of putative class members who are and have been moving through the District that allows this Court to evaluate whether joinder is practicable. *Cf. Victory v. Berks County*, No. 18-5170, 2019 WL 2950171, at *24 (E.D. Pa. July 8, 2019) (determining joinder impracticable based on the "constant rotation" of incarcerated individuals). In similar class litigation in the Southern District of New York, the government moved to vacate class certification on the basis of numerosity, arguing on April 21 that only eight Venezuelan citizens with alleged TdA membership were currently detained at the only ICE detention facility in that district. Belsher Decl. ¶ 2. But by May 23, the government produced a list of potential class members that listed 21 individuals who had been detained in that district from April 8 (the case's filing) to May 23—including two who were transferred and detained in this District at Moshannon. *Id.* ¶¶ 3–5. At least one of those individuals was detained

6

at Moshannon after this Court's decertification of the class. *Id.* ¶ 4. (listed as "5/19 ARREST TO MSV").

Respondents argue that W.J.C.C.'s habeas petition demonstrates that joinder is practicable, but the inquiry is whether it is practicable for class members—including future class members who may not yet know they will be detained—to join *this action*. *See* Mot. 3. Moreover, while Respondents claim that W.J.C.C.'s ability to file a habeas with assistance of counsel demonstrates that joinder is not impracticable, Opp. 4, it underscores the inverse: Because many people in detention are unrepresented and not able to retain counsel, Mot. 5 (citing ECF Nos. 57-10 ¶¶ 8–12 and 57-11 ¶¶ 3–16), many putative class members are not likely to come to undersigned counsel's attention; the inability to identify these class members thus makes joinder impracticable. *See G.F.F. v. Trump*, No. 1:25-cv-02886, 348 F.R.D. 586, 588 (S.D.N.Y. 2025) (limited available information about detainees subject to Proclamation and detainees' limited access to counsel made joinder impracticable); *cf. A.A.R.P.*, 145 S. Ct. at 1370 (to "actually seek habeas relief," detainees must "reasonably be able to contact counsel").

While citing *Gerstein v. Pugh*, 420 U.S. 103 (1975), Respondents additionally claim that because they have transferred Petitioner out of the District, there is no one with a live claim and the class cannot be certified, Opp. 3, 5, but this is not so. First, *Gerstein* holds that an inherently transitory class need not have a class member at all times. In *Gerstein*, the Supreme Court held that class certification was available because of the "temporary" nature of pretrial detention and the "certain[ty] that other persons similarly situated *will be* detained" pursuant to the challenged policy. *Id.* at 110 n.11 (emphasis added). The Supreme Court upheld certification even though "the [two] named respondents were members of a class of persons . . . but the record d[id] not indicate whether *any of them* were still in custody awaiting trial" at the time of class certification. *Id.*

7

(emphasis added). The use of the phrase "any of them" (more than two) rather than "either of them" (which would be used to refer to the two named class representatives) indicates that there was no information in the record as to whether *any* such person remained detained. But even though there was no evidence as to anyone currently detained, class certification for the inherently transitory class was appropriate: the Court could "safely assume" the existence of others "with a continuing live interest in the case." *Id.* The same logic applies here.

Second, in any event, there is currently a detained individual with a live interest: W.J.C.C. This Court recently held that W.J.C.C. has standing to challenge his removal under the AEA and the Proclamation "due to his imminent threat of removal" *W.J.C.C.*, No. 3:25-cv-00153, ECF No. 20 at 5 & n.3. That decision is consistent with *A.A.R.P.*, in which the Supreme Court granted interim relief for named plaintiffs and members of the putative class who, like W.J.C.C., were at imminent risk. 145 S.Ct. at 1369. W.J.C.C. is detained in the district and has a "live interest." *Gerstein*, 420 U.S. at 110 n.11.

For an inherently transitory class, "all [the plaintiff] must show is that the claim is likely to recur with regard to the class." *Olson v. Brown*, 594 F.3d 577, 584 (7th Cir. 2010); *see also Schall*, 467 U.S. at 256 n.3 (certification of habeas class where class representatives' detention had ended, because "other persons similarly situated will be detained"). And certification of an inherently transitory class is particularly appropriate where defendants have "discretion" over "[t]he duration of [the class representative's] claim," because they control transfer from one detention center to another. *Olson*, 594 F.3d at 583; *see also J.A.V. v. Trump*, No. 1:25-cv-00072, 2025 WL 1256996, at *3 (S.D. Tex. May 1, 2025) (the ability to transfer detainees into the district made joinder impracticable, especially since detainees were currently unknown); *cf. Richardson v. Bledsoe*, 829 F.3d 273, 279, 286 (3d Cir. 2016) ("picking off" exception). Otherwise, denial of class certification

8

risks "creat[ing] perverse incentives" for defendants to attempt to effectuate an end run around class-action claims. *Jonathan R. by Dixon v. Justice*, 41 F.4th 316, 326 (4th Cir. 2022). Respondents do not address this fundamental point. *See* Mot. 7.[4]

In *A.A.R.P.*, the Supreme Court stated: "[W]e are skeptical of the self-defeating notion that the right to the notice necessary to actually seek habeas relief must itself be vindicated through individual habeas petitions, somehow by plaintiffs who have not received notice." 145 S. Ct. at 1370 (cleaned up). And, as noted, the Court's relief encompassed plaintiffs and putative class members based on imminent risk of designation and removal, *not* based on present designation. Contrary to Respondents' assertions, these significant developments are directly applicable here.

Respondents have not revealed how many individuals detained in the District have been designated or are currently at imminent risk of designation because of a TdA allegation. Nor do Defendants disclaim that individuals with TdA allegations have been transferred to and from this District, or that more may be transferred going forward – making them subject to swift removal to El Salvador for the remainder of their lives. But the evidence indicates that numerous individuals have been and will continue to be. Petitioner has satisfied numerosity, and class treatment is warranted so that individuals are not transferred to this District and removed without meaningful notice before any lawyer can be retained.

## CONCLUSION

The Court should grant Petitioner's motion for reconsideration.

---

[4] Respondents argue that *J.D. v. Azar*, 925 F.3d 1291 (D.C. Cir. 2019), stands for the proposition that some members of an inherently transitory class must have a live interest throughout the proceedings. Opp. 3. But the D.C. Circuit relied on *Gerstein* for its analysis, *J.D.*, 925 F.3d at 1310–11, and as described *Gerstein* only required that there *would be* live interests in the future. 420 U.S. at 110 n.11. Additionally, even if a live interest were required at all times, individuals at imminent risk—like W.J.C.C.—have a live interest.

9

Dated: June 6, 2025

Noelle Smith (CA 344481)**
Oscar Sarabia Roman (CA 341385)**
My Khanh Ngo (CA 317817)**
Cody Wofsy (CA 294179)**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
T: (415) 343-0770
F: (212) 519-7871
E: nsmith@aclu.org
E: osarabia@aclu.org
E: mngo@aclu.org
E: cwofsy@aclu.org

Vanessa L. Stine (PA 319569)
Witold J. Walczak (62976)
Keith Armstrong (PA 334758)**
AMERICAN CIVIL LIBERTIES UNION OF
PENNSYLVANIA

P.O. Box 60173
Philadelphia, PA 19102
T:  215-592-1513
F: 267-573-3054
E:  vstine@aclupa.org
E:  karmstrong@aclupa.org

247 Ft. Pitt Blvd., 2d Fl.
Pittsburgh, PA 15222
T:  412-681-7864
F: 267-573-3054
E:  vwalczak@aclupa.org

Respectfully submitted,

/s/ Lee Gelernt
Lee Gelernt (NY 2502532)**
Daniel Galindo (CA 292854)**
Ashley Gorski (NY 4874228)**
Patrick Toomey (4983979)**
Omar Jadwat (NY 4118170)**
Hina Shamsi (NY 2995579)**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 519-7871
E: lgelernt@aclu.org
E: dgalindo@aclu.org
E: agorski@aclu.org
E: ptoomey@aclu.org
E: ojadwat@aclu.org
E: hshamsi@aclu.org

Attorneys for Petitioner-Plaintiff
**Admitted pro hac vice